The next case this morning is 411-0215, Zabaneh Franchises LLC v. Walker. For the appellant is Andrew Mays. Thank you. And for the appellee, Patrick James Smith. Okay, Mr. Mays, you may proceed, sir. Thank you. Good morning. May it please the Court, Mr. Smith. Counsel. We're here today on appeal in an employment contract case containing a restrictive covenant between an H&R Block plaintiff and the defendant, who is a former employee. There are two issues to be discussed. There are two rulings of the trial court that have been appealed. First issue is whether procedurally the trial court was properly dismissed H&R Block's verified complaint without any answer having been filed, verified or not, no hearing having been held, no verified statement being filed by the defendant. And second, whether or not the plaintiff was entitled to a preliminary injunction to preserve the status quo of the states during the pendency of the case. I'd like to discuss the dismissal first before getting into the preliminary injunction. I think that the discussion of that will aid itself into one of the factors on the preliminary injunction. Procedural history of this case is that the verified complaint was filed on February 17, 2011. It was the middle of tax season. And it was filed along with a motion for temporary restraining order and preliminary injunction. Those were supported by an affidavit and a memorandum of law. The defendant filed a motion to dismiss. That is not the subject of this appeal. That was dealt with at the trial court level. And an unverified response to the motion for temporary restraining order and preliminary injunction. Those were filed on February 23. No answer has been filed in this case denying any of the allegations of the verified complaint. No other pleading has been filed by the defendant. No sworn statement has been made by the defendant. No hearing has been held on the sufficiency of the complaint, whether it's enforceable or not, going towards the issues that the trial court dismissed the case based on. There was a hearing held on the motion for temporary restraining order, but at that hearing no live testimony was heard. The trial court heard only argument from counsel, and before any witnesses could be sworn, announced his ruling. The only pleading that the trial court is permitted to base its decision on to dismiss this case is the verified complaint. It's the only sworn statement that it has in front of it in the record. The defendant filed no pleadings, verified or not, denying the allegations contained in this complaint. An Illinois complaint contains minimum allegations that could give rise to a cause of action. It should not be dismissed. Complaint alleging a violation of the restrictive covenant in an employment contract must contain an allegation that parties entered into a valid agreement containing a restrictive covenant, that the defendant violated that agreement, and that the plaintiff was damaged as a result of that breach. The trial court found that the contract was a contract of adhesion? That's correct. It found that. I don't believe it validly found that based on the evidence that it had in front of it. As I said, no hearing was held as to that issue, and so the court only had a complaint. I believe the allegations in the complaint were sufficient to justify the continuation of the case, to not have it dismissed outright. If a hearing were to be held, if the court found that it was an unenforceable contract based on its adhesion, based on consideration, there are a couple of different arguments that I believe Mr. Smith is going to make, then that would be the basis to dismiss it, but we never got to that point in the litigation. What we had was argument by counsel, nothing that could be considered evidence, and then the judge announced his ruling. The trial court's written order says the contract by plaintiff's counsel's own admission is a contract of adhesion. In the discussion before, we were talking about the contract, and I did say that because it was a contract that she had in front of her, and she could either accept it, and she could accept it and take that employment, or she could go somewhere else, that yes, it was a contract of adhesion. That doesn't necessarily mean that it's unenforceable, though. There are contracts of adhesion that happen all the time, especially in an employment situation. The parties, the employer offers employment at a specific rate. If they have multiple people applying for the job that are qualified, they're going to give it to somebody and pay that rate. That's the contract that was offered, that's the contract that was accepted. I believe there was consideration making this a valid contract, and so even though it was a take it or leave it contract, I believe that it would be enforceable. In order for the court to find it unenforceable, I believe it needed to have a hearing based on those issues to hear more of the particulars on how it was signed and the position of the parties to determine the bargaining power of each party and the respective positions. In this case, the complaint alleged that there was a valid contract. It alleged that there was a restrictive covenant. The specific restrictive covenant limited the defendant from soliciting and providing services to company clients, and that was defined in the contract, for a period of two years. It also prohibited her from soliciting employees to work for her in a competing business for a period of one year. This contract does not limit her ability to compete with H&R Block. She was well within her rights to open up a competing tax preparation business. It's just that she couldn't use the proprietary information, the personal information that she learned from the clients that she came into contact with at H&R Block. She couldn't use that information to harm H&R Block. And I think just as importantly, all of these allegations have been made. The defendant hasn't denied any of them. No answer has been filed, and I think that's one of the key issues on this first part about the dismissal of the case. The defendant acknowledged in her reply brief that all well-pleaded facts should be accepted by the trial court when considering a motion to dismiss. That's how I've approached this, even though it was responded by the court. I believe the analysis is the same as if a motion had been made. The allegations of the complaint should be construed in the light most favorable to the plaintiff. Complaint should not be dismissed outright unless it's, quote, clearly apparent that no set of facts could entitle the moving party to relief, and that's Connell v. Topenka. So what should we do here? What we're asking the court to do is remand the case back to trial court to have a hearing on these exact issues. I think that the trial court judge needs to have all of the facts and circumstances in front of it based on live testimony and evidence before it's able to make its ruling. What is missing from, what is live testimony going to do that isn't already done by the plaintiffs? The live testimony is going to flesh out, more particularly, the relationship that the defendant had with the clients, the justification for having a non-compete, excuse me, not a non-compete, a non-solicitation and non-providing services to company clients clause in that contract. It's going to explain, there would be testimony about retention of clients and why it's a proprietary interest of H&R Block that they have an interest in that they should be able to protect. And it'll explain some more of the circumstances regarding her continuing employment with H&R Block. I believe she did her first one-year contract, I don't know if it was in 2003 or for tax season 2003, up and through the year that she stopped working. And so there's a relationship there. She was an office coordinator, it's a management position, and so she's privy to a larger amount of confidential business information for all clients. And I think it will just talk about generally why a tax preparer in general, why it's justified to have this type of restrictive covenant for a tax preparer. It's a very intimate thing to have somebody do your taxes for you. You're disclosing all of your income information for the year. If it's a long-standing arrangement, they know what your income has been for a period of years. It's very important that you get it correct, and it's very important that you are fully honest with them so you get your maximum refund minimized, taxes paid. Is my understanding correct that the only persons that she's prohibited from working on are people who were her clients when she worked with H&R Block? That's correct. The contract prohibits her from providing those services and soliciting what's entitled company clients. But it's not just people who were clients of H&R Block. It was where she worked on their taxes. That's right. Where she has personal information based on her position as that, I believe her title was office coordinator. But she did in excess of, I believe it was 700 tax returns for the previous year. Those people would be the ones that she'd be prohibited from soliciting. And then also she had access to the database for that particular location with all of the business information. She would be prohibited from downloading that list of clients, phone numbers, social security numbers, prior year income, and contacting them directly. The 700 people she worked on? The 700 people she worked on and the additional people at that location that she had all of that information for. Well, I'm not sure I understand. Does that mean, so John Smith had a small business and he had H&R Block to his taxes, but he had never met your client? Even if he never met Mr. Smith's client, she would be prohibited from providing services to him if she learned his information based on her role as office coordinator. What the contract prohibits her from doing is downloading a client list, the information that H&R Block holds on its services, printing off a copy, Is there any evidence that she did that? There is some indication that she did that, but that's not in the record yet because it was disposed of before that could come out. So yes, if she had downloaded that list, those would be individuals that she'd be prohibited from providing services to. And I think that that is analogous to a case that Mr. Smith cited. It was the ILG Industries. It's a trade secrets case, but it was held that the individual who had, they were talking about industrial fans. And it was, they were attempting to say that the design for this particular fan that this former employee had gained was a trade secret. And the court held that he couldn't use the items that he had downloaded, that he'd copied, the sketches, the measurements, the drawings, for his new employer, even though some of those items could have been learned through other ways. He could have purchased the former employer's fan, taken measurements and reverse engineered it essentially. But they said because he had taken those documents, he'd taken those drawings, he wasn't permitted to use that information because it was a trade secret, even though he could have achieved the same result using different means. And I think that's the same here where there would be an allegation that she, and this is a client list with proprietary information, with personal business information of these individuals, that she takes from H&R Block and then uses that. So those are the people that I believe this contract, this restrictive covenant, would prevent her from servicing. Procedurally, I believe that this case would be the same as if the trial court received a courtesy copy of the complaint, reviewed it, read it, and then without hearing any additional information. I believe that the motion for preliminary injunction, the response to that filed by the defendant, are irrelevant in the court's determination that this is an unenforceable contract because it's the only sworn statement. It's the same as if you just mailed us a copy of an order dismissing the complaint without having any additional testimony. The procedure that should have been followed is the same one that was followed in the reliable fire equipment company case, the most recent Supreme Court case. In that case, there was a restrictive covenant. The plaintiff alleged that there was a breach of that restrictive covenant. Filed suit, the defendant answered that, filed a motion to dismiss, and a hearing was held on those issues. That ruling was then appealed. That's the procedure that should have followed here. The court should have allowed the defendant to answer, deny whatever allegations they disagree with, file a motion to dismiss if that's appropriate, motion for summary judgment, however the defendant wanted to approach it, and then have a hearing on those issues to determine what rights and remedies what plaintiff's entitled to. It's the normal litigation process that happens every day, and it should have happened in this case. But it's not what happened in this case. No answer, no live testimony, no hearing held. The court simply stated the contract was unenforceable and therefore dismissed the complaint. I want to address, and I've already talked about one of them, one additional argument that the defendant makes in its reply brief. I will stay from the outset. I believe the proper venue for discussing this argument would be at a hearing at the trial court level, but I'll address it briefly. The defendant claims that there's no consideration in this contract, and based on the no consideration, the restrictive covenant is unenforceable. I don't believe that the cases cited by the defendant in this case support that conclusion. The first case is Brown v. Brown, cited in the defendant's brief, that they claim states that seven months of employment is insufficient consideration to support a restrictive covenant. In that case, it was insufficient. The contract was not for a finite period of time. It was just an ongoing employment contract. They had negotiated a non-compete clause, and then seven months after that non-compete clause was signed, the employee quit, began competing, and litigation ensued. I believe that that situation is different from our current situation. In the current situation, it's an employment contract for a finite period of time. It is tax season 2010, and so between the time when the contract signed and the end of tax season is 100% of what the offer of employment was. That offer was made, the defendant accepted that offer, and the parties fulfilled their obligations. That's a consideration. She worked for 100% of the contract. Even though the period is shorter than seven months, because it was 100% of the agreed upon bargain, I believe that that's sufficient consideration. Go back to law school, and they say that a peppercorn is sufficient. Because it was 100% performance by the employer, I believe that that justifies finding that there was consideration in this contract. Offer, acceptance, consideration, therefore it's enforceable. The second case that's cited is the Dierdrich insurance case. That case, they claim, stands for proposition, three months continued employment is insufficient consideration. That case was a little bit different. It was an amendment to a prior non-compete case, and the court found that the employee, the defendant, didn't change his position. He didn't give anything up. They renegotiated it, and it changed from a two-year non-compete period to a 12-month period. And so the court found that his position never changed, and there was no consideration. It's not just that three months was insufficient. Again, in this case, it's 100% performance by both parties up until the breach after the breach. Counsel, let me go back and ask you about the definition of company clients. It seems to be rather broader than the term used in the contract. Reading Section 10C of the contract, for purposes of this section company clients is defined as every person or entity whose federal state tax return was prepared or electronically transmitted by associate, that's Ms. Walker here, for whom the associate performed any alternative products or services during the term of the agreement. During any other period of time, the associate was employed. It says nothing about contacting people. It says nothing about anything other than restricting her from people with whom she's worked. That is, if she didn't prepare the taxes of John Smith, the John Smith might be in the database someplace and had been worked on by some other person employed at Zabani's H&R Block. Where is this limitation? I'm sorry, I'm not following you. Are you saying that you don't see where the contacting? Yes. It seems to me that company clients is defined as solely those people for whom she worked, individually and personally. I would read this as that it's for the people that she had direct contact, prepared or electronically transmitted, and in her role as office coordinator for whom the associate provided services. Where is any of that? The second line of that, or for whom associate provided any alternate products or services directly after electronically transmitted by associate. Doesn't that mean that she did something for these people, provided services for them? So that is, if she didn't have any contact with John Smith's hardware store, how is John Smith going to be covered under this contract? I believe that in her role as managing, as the direct supervisor of the people who actually did that work, that work would be imputed to her because of her role as a supervisor. That's a rather expansive definition, isn't it? It is an expansive definition. I think it's justified. But even if it's only limited to the people she directly provided services to, that's still over 700 people. What's a little strange about your posture here is it seems to me you're better, you're more likely to prevail on a restricted definition than an expansive one. Certainly at this stage to say, hey, we're just limited to the people she worked with. What's the problem? I would agree with that. But you're arguing a more broad definition here. I think that it's justified. I think the argument can be made. If the court limited it to just those 700-some-odd clients that she directly provided services to, that wouldn't be something that we would object to too terribly much. Well, it seems to me that's what the contract says. Well, if you have an opportunity to address this again, Roboto. Thank you. Your time's up. Okay, Mr. Smith. Procedurally, the complaint was filed. I filed a motion to dismiss. The argument on the motion dismissed and their emergency motion was all held at the same time. The court, reviewing the pleadings and the contract on its own, decided that there was not an enforceable agreement. And I think that the court was right. Just because you have a restrictive covenant, and there is a place for restrictive covenants. I mean, people do have legitimate interest in that. But the restraints should be narrow. And we have a contract for 104 days in which they're going to impose a one- and a two-year restraint. And the only consideration given is the employment. In addition, both at the trial court and in its brief, counsel admits this is a contract of it easy. She had to take it or not take it. What does that mean? Well, it means that the contract was given to her, and she had no bargaining power in it. She had no ability to go back. It was given to her, and she signed it. So she said, oh, I want to work for you, and I want to sign it, but you know this Section D restrictions, I don't want to do those. Well, she could have done that. Did she show that she said any of that? No, she did not. So then it's bad to have that provision in there? You mean that the provision? I'm not sure why contract of adhesion is a pejorative. What makes it so bad? Well, it only makes it – Number one, she didn't have to sign it. Number two, she could have said, you know, I want to scratch out that, and I still want to go work for you. Is that okay? We don't know anything about her having done any of that, do we? All we do know is that what she was given by them, and I think they'll admit, is what she signed. Okay. And that. So is it your position they have to sit down and say, well, let's negotiate the terms of your hiring, and here's one that we would like to include, and then it would be okay? It wouldn't be a contract of adhesion? No. No, I mean, the contract of adhesion is, I understand the law says, one party comes together and says, this is the agreement. You either take it or you walk away. And if they take it, then they really have no choice with regard to it. Or walk away. Or walk away. Right. That is a choice in terms. That is a – How about the provision that you can't engage in sexual harassment while an employee of our firm? Is that another contract of adhesion provision? Is that in the contract? Well, if it were, would that render bad? Are we talking about another bad provision? Well, that would make a – I think that provision would – Take it or leave it. It says don't engage in sexual harassment. You agree not to engage in sexual harassment. Well, that's something that I would say doesn't even have to be in the contract to abide by. And, yeah, they could say, no, I don't want to do that. I don't think that would make it a bad contract. I mean, you know, all the terms in the contract aren't bad. Some of them are reasonable in that. But I just don't think that 104 days of employment justifies one in two years restriction, particularly against the job that the person is doing. This is not a – I mentioned the eye case with the surgeon. This is not the – What would be a reasonable provision here? That is, if you were representing Zabani franchises, is there any limitation that you could impose so that what happened in this case wouldn't? That would be legitimate? Well, possibly if you limited it to the next tax season. I'm sorry, say it again. Say if you limited it to the next tax season because of that. But, you know, all of these tax preparers, they have no vested interest in their clients. I mean, there's so many out there, you know, Liberty with their little statue on the side. I mean, if that person goes to H&R Block this year, there's no assurance he's going to go to H&R next year. They have no vested interest in those clients. They can go any place they want. Well, what about – it seems to me that the restriction is contrary to the argument Mr. Mays made. It's just on the people she personally worked with. She had a personal relationship with these people as a tax preparer due to her position as an employee of this firm. And they're saying you can go up and throw up your own shingle, go work and be a tax preparer, you just can't solicit those same people. What's the matter with that? For two years. Right, but I don't necessarily read it that way and it's a little confusing. For example, they're saying that she's doing a tax return and the lady next door says, hey, Bill Jones had this question, can you answer that question for me? Has she provided a service for Bill Jones and therefore she couldn't take Bill Jones? It becomes almost impossible to separate all these people except for the ones that you actually saw where she says, I think on the e-file you've got to put a name down that her name would be down there. And there's no – Did she provide any services to Bill Jones? Well, she didn't see Bill Jones or talk to Bill Jones. I mean, we have some – it's kind of like – and we have some case law on this for doctors. If a surgeon in the doctor's locker room says, hey, Charlie, I've got this procedure going on here and I'm going to try to do X stage, got any thoughts about that? The guy he talked to in the locker room didn't suddenly become in a physician-patient relationship with the person who he's going to be operated on, any more than if Ms. Walker turns to her colleague and says, how does that work again on figuring out capital gains in the situation of X? That's your argument? You say, oh, she's now going to be – got a relationship here? Well, if that's the word they want to use, they want to say relationship with that person, then you've got to define that a little bit further, what constitutes a relationship in that. I mean, there's any number of scenarios. Preparation of tax returns. Providing the following services to the company client. Personally prepared tax returns. Personal involvement. So then they want to limit that solely to tax returns that she actually prepared, not tax returns that she may have provided assistance for in answering questions. I'm just reading the contract there. Right. What's the matter with that provision? If you personally created a relationship with some client, don't be soliciting them for someone else. Well, I'm not so much opposed to what that says. As I just say, in this context, in this application, I think that it's not appropriate to have a one- and a two-year provision based upon 104 days in an industry where there is really no absolute client-employer and client relationship. I mean, tax returns are – you can go anyplace. There's so many tax preparers around. Isn't it a concern here that John Smith is going to say, hey, Terry Walker did a nice job. She was very pleasant. Handled it promptly. I'm pleased with her. Oh, she's now got her own business. I'm going to go to see her. That's a possibility. Isn't that exactly the concern that the Zamboni franchise is concerned about? Why is that unreasonable? It's unreasonable because I have a 104-day contract, and you're telling me you're prohibiting me from working for two years, or one year and two years, period. I think that's unreasonable. I think the cases talked about employment can't be the consideration solely for this. Okay. I have nothing else unless the Court has some questions. Okay. Thank you, Counsel. Mr. Mays, any rebuttal, sir? Just briefly, Your Honor. It seems that Mr. Smith's entire argument is that it's unreasonable to enforce this type of contract for this period of time, for this restricted period of time, for this type of service. I will note that in analyzing some other contracts, they look at the geographic restriction. You impute the type of geographic restriction based on the specific clients. Same thing, I believe, applies on the term. It's a contract for only 104 days, but the restriction essentially is only for 208 days. Tax preparers aren't doing anything right now. Tax season's over April 17th this year, and they're busy from January or so through April. So the period that they're restricted from is two tax seasons in exchange for employment for one tax season. I think that that makes it sound much more reasonable. It's exactly the same thing that it is, but it doesn't sound so agreeable. Counsel, there's this stuff in this case about Missouri law. What's that all about? The contract, H&R Block corporate offices are based in Kansas City, Missouri, and so this contract has Missouri law. In all of the citations that I had for my memorandum of law in support of the motion for preliminary injunction for a temporary restraining order, that cited Illinois law because the procedure for a preliminary injunction is procedural in nature. I didn't believe that it went to the basis of the complaint, and so I was citing Illinois law on that. The trial court imputed that that meant that everything implies Illinois law. To be honest, I believe that the Illinois conflict of laws would apply Missouri law because it doesn't go contrary to Illinois public policy. The standards are essentially the same. I believe that it's enforceable both under Illinois law and Missouri law if the court wants to apply Illinois law. Do we need to address Missouri law at all from your point of view? I don't believe so. Does the contract say that Missouri law shall apply? It does. Anything further? Only, Your Honor, we're asking the court to remand this case just to have a hearing on the exact issues that Mr. Smith has raised up today. I believe that my client's entitled to have a hearing in front of the trial court with evidence being heard before decisions made, not just based on the sufficiency of one uncontested, unchallenged, verified complaint. Thank you. Thank you, counsel. We'll take just a minute of your time.